## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

**RAFAEL PINA, et al.,**

**Plaintiffs,**

**v.**                                                    CIVIL NO. 11-2217 (GAG)

**TONY FELICIANO RIVERA, et al.,**

**Defendants.**

## OPINION AND ORDER

Plaintiffs Rafael Pina ("Pina"), World Management Latino Corp., and World Music Latino Corp filed the present Complaint on December 16, 2011, alleging breach of contract and copyright infringement by Defendant Tony Feliciano Rivera ("Feliciano").  (Docket No. 13.)  On December 4, 2013, Plaintiffs and Defendant Feliciano entered into a Confidential Settlement Agreement ("Settlement Agreement").[1]  (Docket No. 93.)   Accordingly, this Court dismissed the claims against Feliciano, but retained jurisdiction to enforce the Settlement Agreement.  (Docket No. 95.)  Plaintiffs now move for a preliminary injunction enjoining Feliciano's alleged violations of the Settlement Agreement.  (Docket Nos. 129; 130.)

The Court referred this motion to Magistrate Judge Bruce McGiverin for Report and Recommendation (R&R).  (Docket No. 151.)  Judge McGiverin promptly recommended that the Court **GRANT** the preliminary injunction, reasoning that the parties had specifically agreed in the Confidential Settlement Agreement ("CSA") to extend previous contracts for a term of either five years or until the satisfaction of the $500,000 judgment against Feliciano – whichever is later.

---

[1] The settlement agreement contains three separate contracts: (1) a "Confidential Settlement Agreement" ("CSA"); an "Exclusive Recording Contract;" and (3) an "Exclusive Agreement for Management and Representation." (Docket No. 93.)  The same was submitted to the Court on January 14, 2014.  Id.

**Civil No. 11-2217 (GAG)**

(Docket No. 176 at 9.)  Interpreting this language, Judge McGiverin decided that Feliciano is "at the very least bound by the agreements incorporated in the CSA until 2018."  Id.  Because Feliciano had readily admitted that he had been performing at events without Pina's authorization, and had cancelled events that Pina had scheduled for him, Judge McGiverin reasoned a preliminary injunction is warranted.  Id. at 5, 16.

Pending before the Court is Feliciano's Objection to Magistrate Judge Bruce McGiverin's R&R on Plaintiff's Motion for Preliminary Injunction.  (Docket No. 183.)  Feliciano timely objected to the Magistrate Judge's R&R and requests that the Court deny Plaintiff's Motion for Preliminary Injunction.  Id.  Defendant argues that Judge McGiverin relied on a flawed interpretation of the CSA, and the Puerto Rico Civil Code provisions that govern it.  Id. at 1.  Feliciano contends he is not bound by the terms of the agreement until 2018, and that he has already satisfied the full judgment award of $500,000.  Id. at 14.  Yet, Defendant concedes that the CSA supersedes any other agreements and binds both parties.  Id. at 1.

After reviewing the R&R and the applicable law, the Court hereby **ADOPTS** Magistrate Judge McGiverin's R&R at Docket No. 176 in its entirety and **GRANTS** Plaintiffs' Motion for Preliminary Injunction at Docket Nos. 129 and 130.

### I.   Standard of Review

"Pursuant to Title 28, United States Code, Section 636(b)(1)(B), FED. R. CIV. P. 72(b), and Local Rule 503, a District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation."  United States v. Armstrong, No. 04-CR-250 (JAG), 2009 WL 1292620, *2 (D.P.R. May 7, 2009) (citing Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003)).  Upon receiving timely objections, the District Judge will make a de novo determination regarding the objected portions of the R&R.  Id. (citing Rivera-De-Leon

**Civil No. 11-2217 (GAG)**

1    v. Maxon Eng'g Servs., 283 F. Supp. 2d 550, 555 (D.P.R. 2003)).   Thereafter, the Court may

2    "accept, reject or modify, in whole or in part, the findings or recommendations made by the

3    magistrate."   Id. (citing Alamo Rodriguez, 286 F. Supp. 2d at 146; Templeman v. Chris Craft

4    Corp., 770 F.2d 245, 247 (1st Cir. 1985)).

5         **II.   Discussion**

6         The Court weighs the following factors to decide whether a preliminary injunction should

7    be granted: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to

8    the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to

9    the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues;

10    and (4) the effect (if any) of the court's ruling on the public interest."   Bl(a)ck Tea Soc'y. v. City

11    Of Boston, 378 F.3d 8, 11 (1st Cir. 2004) (citations omitted).

12         "The *sine qua non* of this four-part inquiry is likelihood of success on the merits: if the

13    moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors

14    become matters of idle curiosity."   New Comm. Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d

15    1, 9 (1st Cir. 2002).   In determining Plaintiffs' likelihood to succeed on the merits, Judge

16    McGiverin correctly found the crux of this case is the interpretation of the Settlement Agreement,

17    particularly the Settlement Agreement's integration clause.   The integration clause in the CSA

18    states that the Settlement Agreement "constitutes the entire agreement between the parties with

19    regard to the subject matter hereof and *supersedes* all prior and contemporaneous agreements,

20    understandings, and representations between the parties, oral or written, concerning such subject

21    matter."   (Docket No. 93 ¶ 2.6.) (emphasis added).   In the CSA, Feliciano agreed to extend the

22    Exclusive Recording Agreement, the Exclusive Booking Agreement, and the Management

23    Contract to a period of either five years, or until Feliciano satisfies a $500,000 judgment –

24

**Civil No. 11-2217 (GAG)**

"whichever is longer."  In essence, the parties agreed to extend the duration of the prior contracts for five years, from December 4, 2013 until 2018.

Relying on language from the previous contracts, Feliciano instead argues that "whichever is longer" simply means he could have more time, if needed, to satisfy the $500,000 judgment. (Docket No. 183 at 9.)  However, Feliciano concedes, and the integration clause is clear that the CSA supersedes any other agreements previously entered into by the parties.  Any terms from those previous contracts that are inconsistent with the CSA are simply not valid.  Because Feliciano admits that he has performed and contracted various events without Plaintiffs' knowledge, he is violating the terms of the CSA, and Plaintiffs have shown likelihood of success on the merits.

The Court also agrees with Judge McGiverin's articulate reasoning regarding the three remaining factors.  First, as Defendant continues to violate the terms of the agreements, Plaintiffs suffer harm to their reputations, goodwill, and business.  Second, this matter reached the Court as a result of Feliciano's refusal to honor the terms of his original contract with Plaintiffs.  Feliciano's continuous violations of the agreements tilt the balance of hardship heavily in Plaintiffs' favor.  Third, the public interest is better served when the Court enforces clear, unambiguous contracts.

The Court adopts Judge McGiverin's proposed preliminary injunction order verbatim.  (See Docket No. 176 at 16-17.)  Plaintiffs' preliminary injunction motion is **GRANTED** as follows:

Tony Feliciano Rivera d/b/a "Tony Dize" and his officers, servants, employees, attorneys, successors and assigns, and any person acting in concert or participation with him are hereby enjoined from:

1. Violating the terms of the December 4, 2013 Confidential Settlement Agreement, which comprises pages 1–7 of the

4

Civil No. 11-2217 (GAG)

document submitted at Docket No. 93. This Confidential Settlement Agreement incorporates and modifies three prior agreements executed on November 3, 2005: (1) the Exclusive Recording Contract, Docket No. 29-1; (2) the Exclusive Booking Agreement, Docket No. 29-2; and (3) the Management Contract, Docket No. 29-3.

2. Entering agreements or contracts regarding the scheduling of appearances by Feliciano of a musical, promotional, or marketing event.

3. Negotiating the terms of a musical, promotional, or marketing event by Feliciano.

4. Collecting artistic and mechanical royalty payments, including but not limited to, royalties from Sound Exchange.

5. Collecting money, payments, or funds for musical services, promotional events, or marketing performances independent of Feliciano's settlement agreement with Pina.

6. Representing that in transactions that involve Feliciano's musical career, anyone other than Pina can represent, manage, or negotiate on Feliciano's behalf.

7. Interfering with Feliciano's events that Pina schedules by directly engaging promoters, producers, or sponsors without the knowledge or consent of Pina.

8. Aiding or abetting the violation of this injunction order.

Civil No. 11-2217 (GAG)

### III.     Conclusion

Thus, after conducting a *de novo* review, the Court finds that Defendant's objection is without merit, and **ADOPTS** in its entirety Magistrate Judge McGiverin's Report and Recommendation at Docket No. 176, and **GRANTS** Plaintiff's preliminary injunction at Docket No. 129.

**SO ORDERED.**

In San Juan, Puerto Rico this 7th day of March, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge
