# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **RAFAEL PINA**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **TONY FELICIANO-RIVERA,** *et al.*, <br><br> Defendants. | Civil No. 11-2217 (GAG/BJM) |

## REPORT AND RECOMMENDATION

Alleging breach of contract, copyright infringement, and tortious deceit, plaintiffs Rafael Pina, World Management Latino Corp., and World Latin Music Corp. (collectively, "Pina") sued Tony Feliciano-Rivera ("Feliciano") d/b/a "Tony Dize" and requested injunctive relief against him and other defendants not involved in the motion before the court. Docket No. 1. Pina and Feliciano reached a settlement agreement, Docket No. 93, and the court dismissed the claims against Feliciano while retaining jurisdiction to enforce the parties' settlement agreement. Docket No. 95. Pina previously moved for a preliminary injunction, Docket Nos. 129, 130, 143, 150, and the court granted preliminary injunctive relief. Docket No. 185. Pina later moved to hold Feliciano in contempt of court under Federal Rule of Civil Procedure 70(e) for violating the preliminary injunction. Docket No. 217. Feliciano did not oppose the motion. This matter was referred to me for a report and recommendation. Docket No. 220. For the reasons set forth below, the motion to hold Feliciano in civil contempt of court should be **GRANTED**.

## BACKGROUND

In December 2011, Pina filed a complaint alleging breach of contract and copyright infringement by Feliciano. Docket No. 13. Two years later, Pina and Feliciano entered into a Confidential Settlement Agreement ("the CSA") and, as a result, the court dismissed the claims against Feliciano but retained jurisdiction to enforce the CSA. Docket Nos. 93, 95, 185. In June 2015, Pina moved for a preliminary injunction to enjoin Feliciano's alleged

violations of the CSA. Docket Nos. 129, 130, 185. Feliciano argued against the interpretation that he was bound by the CSA until at least 2018, while also arguing that he had already satisfied the full judgment award of $500,000. Docket Nos. 183, 185. The court found that Feliciano was "at the very least bound by the agreements incorporated in the CSA until 2018" and granted Pina's motion for preliminary injunction in March 2016. Docket No. 185. The preliminary injunction prohibited Feliciano or "any person acting in concert or participation with him" from, among other things, (1) "entering agreements of contracts regarding the scheduling of appearances by Feliciano of a musical, promotional, or marketing event," and (2) "negotiating the terms of a musical, promotional, or marketing event by Feliciano." Docket No. 185.

On January 24, 2017, Pina moved to hold Feliciano in contempt of court, alleging that Feliciano "continued to enter into unauthorized engagements" in violation of the preliminary injunction. Docket No. 217. To support his claim, Pina provided a list of Feliciano's performances that occurred, without notifying World Management Latino, after March 7, 2016. Docket No. 216-1. Pina also provided images from the social media accounts of Feliciano and others promoting some of those performances in violation of the CSA. Docket 216-2. Feliciano did not oppose Pina's motion.

## DISCUSSION

Pina contends that his motion to hold Feliciano in contempt should be granted because Feliciano violated the preliminary injunction entered against him on March 7, 2016. Docket No. 217. Pina supports his contention by stating that the preliminary injunction is clear and unambiguous, that proof of Feliciano's noncompliance is "readily available on the Internet" by way of social media posts from Feliciano and his associates, and that Feliciano has failed to make "reasonably diligent efforts" to "substantially comply" with the court order. *Id.* Feliciano did not oppose Pina's motion.

I.　　**Motion for Civil Contempt**

The purpose of civil contempt is "either to coerce compliance with a court order or to compensate a party harmed by non-compliance." *United States* v. *Puerto Rico*, 642 F.3d 103, 108 (1st Cir. 2011). Civil contempt is a "forward-looking penalty" that may be purged by compliance with the court order; criminal contempt, on the other hand, is designed to punish the contemnor's "past noncompliance." *Hawkins* v. *Dep't of Health & Human Servs.*, 665 F.3d 25, 32 (1st Cir. 2012); *see also Shillitani* v. *United States*, 384 U.S. 364, 368 (1966) (civil contemnors "carry 'the keys of their prison in their own pockets'") (quoting *In re Nevitt*, 117 F. 448, 461 (8th Cir. 1902)). Yet, "there is no dichotomous split between coercion and punishment . . . and a civil contempt sanction may evidence a punitive flavor." *AngioDynamics, Inc.* v. *Biolitec AG*, 780 F.3d 420, 426 (1st Cir.), *cert. denied*, 136 S. Ct. 535 (2015).

To show civil contempt, the court must find that the following four prongs have been satisfied: (1) the alleged contemnor had notice that he was "within the order's ambit," *Project B.A.S.I.C.* v. *Kemp*, 947 F.2d 11, 17 (1st Cir. 1991); (2) the order was "clear and unambiguous," *e.g.*, *Accusoft Corp.* v. *Palo*, 237 F.3d 31, 47 (1st Cir. 2001) (quoting *Project B.A.S.I.C.*, 947 F.2d at 16); (3) the alleged contemnor had the ability to comply, *see United States* v. *Rylander*, 460 U.S. 752, 757 (1983); and (4) the order was in fact violated, *Project B.A.S.I.C.*, 947 F.2d at 16. *See also*, *United States* v. *Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005). The Court of Appeals for the First Circuit has "sometimes combined" prongs two and four to ask "whether 'the putative contemnor has violated an order that is clear and unambiguous.'" *Id.* (quoting *Project B.A.S.I.C.*, 947 F.2d at 16). In this analysis for the immediate case, those two prongs will be combined.

*Feliciano Had Notice*

An injunction binds only those "who receive actual notice of it by personal service or otherwise." Fed. R. Civ. P. 65(d)(2). "The notice of a judicial order upon violation of which a contempt finding may properly be based is such notice as would clearly tell a

reasonable person what he is required to do or abstain from doing." *Reed* v. *Cleveland Bd. of Educ.*, 607 F.2d 749, 751 (6th Cir. 1979). Orders for contempt must clearly identify "those who would suffer penalties for disobedience" so that those individuals are aware "not merely of an order's existence, but also of the fact that the order is directed at them." *Project B.A.S.I.C.*, 947 F.2d at 16–17. Thus, the putative contemnor "should have reasonably definite advance notice that a court order applies to it." *Id.* at 17.

In *Spallone* v. *United States*, 493 U.S. 265 (1990), the U.S. Supreme Court found a district court's order did not give sufficient notice to justify holding a noncompliant party in contempt. The district court for the Southern District of New York directed the city of Yonkers to adopt legislation to prevent racial discrimination in its public and subsidized housing. *Id.* at 271. When the majority of council members voted against adopting the legislation, the district court held those council members in contempt. *Id.* at 272. But the Supreme Court reversed the finding of contempt, noting that "the relevant provisions of the underlying decree did not direct the *councilmen* to act; rather those provisions were directed *only to the city*." *Project B.A.S.I.C.*, 947 F.2d at 17 (internal quotations omitted) (emphasis added).

The underlying decree in Feliciano's case is not so opaque. Here, the court order establishing the preliminary injunction names "Tony Feliciano Rivera d/b/a 'Tony Dize' and his officers, servants, employees, attorneys, successors and assigns, and any person acting in concert or participation with him." Docket No. 185. Furthermore, Feliciano was aware of Pina's motion for a preliminary injunction and contested that motion by arguing he was not in violation of the CSA. Docket No. 183. After hearing arguments on both sides, the court found in favor of Pina's interpretation of the CSA and issued the preliminary injunction against Feliciano. Docket Nos. 185, 129. Feliciano then moved to have the injunction set aside on March 14, 2016, providing further proof that he was aware of the injunction's existence. Docket No. 189. I recommended that Feliciano's motion to set aside

the preliminary injunction should be denied. Docket No. 222. Thus, Feliciano had adequate notice that he was within the injunction's ambit.

***Feliciano Violated a Clear and Unambiguous Order***

The clear and unambiguous prong "requires that the words of the court's order have clearly and unambiguously forbidden the precise conduct on which the contempt allegation is based." *Saccoccia*, 433 F.3d at 28 (emphasis omitted); *see also Project B.A.S.I.C.*, 947 F.2d at 17 ("For a party to be held in contempt, it must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion."). The test for determining what is "clear and unambiguous" is whether the putative contemnor is "able to ascertain from the four corners of the order precisely what acts are forbidden." *Saccoccia*, 433 F.3d at 28 (quoting *Goya Foods, Inc.* v. *Wallack Mgmt. Co.*, 290 F.3d 63, 76 (1st Cir. 2002)). When applying the test, the court must "'read any ambiguities or omissions in . . . a court order as redounding to the benefit of the person charged with contempt.'" *Id.* (quoting *NBA Properties, Inc.* v. *Gold*, 896 F.2d 30, 32 (1st Cir. 1990)).

The preliminary injunction contains an eight-item list of activities that Feliciano and his "officers, servants, employees, attorneys, successors and assigns, and any person acting in concert or participation with him" are enjoined from executing. Docket No. 185. The wording of the injunction clearly and unambiguously forbids Feliciano from entering agreements or contracts regarding the scheduling of musical, promotional, or marketing events, because the injunction states as much in its second item. Docket No. 185. Feliciano could not have been confused as to who was expected to behave in the indicated fashion, because those individuals were identified, either by name or function, in the preliminary injunction.

Despite the injunction against such activities, Pina alleges that Feliciano continued to promote himself and enter into contractual agreements to schedule musical performances in violation of the CSA. Docket No. 217. Pina alleges that Feliciano has performed at least

"52 times" after the court issued the injunction. Docket Nos. 216-1, 217. Pina proffers some evidence for his claim in the form of social media posts from Feliciano and his promotion team that advertise the dates and locations of Feliciano concerts. Docket Nos. 216-1, 216-2. Pina claims these concerts occurred in violation of the CSA. Docket No. 217. Feliciano has not offered any evidence to contest Pina's claims that he continues to ignore the terms of the CSA in direct violation of the preliminary injunction. Thus, the court should find that there is clear and convincing evidence that Feliciano violated a clear and unambiguous order.

***Feliciano Could Have Complied***

The U.S. Supreme Court has held that "an alleged contemnor has the burden of showing a current inability to comply with a court order," and that "the contemnor must overcome a presumption of ability to comply with a court order." *Hicks* v. *Feiock*, 479 U.S. 1305, 1306 (1986); *see Rylander*, 460 U.S. at 757. Feliciano has not offered any evidence to show that he was unable to stop performing outside of the CSA. Logically, if Feliciano were able to do performances outside of the CSA, it follows that he would have been able to do those same performances while adhering to the CSA. Since Feliciano has not provided any evidence to show that compliance with the injunction is factually impossible, he has failed to satisfy his burden of proof. Thus, the court must presume Feliciano was able to comply with the injunction.

**II.     Contempt Hearing**

A civil contemnor who asserts "a genuine issue of material fact" is entitled to "a full, impartial hearing." *Morales-Feliciano* v. *Parole Bd. of P. R.*, 887 F.2d 1, 6 (1st Cir. 1989); *see Wash. Metro. Area Auth.* v. *Amalgamated Transit Union, Nat'l Capital Local Div. 689*, 531 F.2d 617, 620 (D.C. Cir. 1976). But due process does not require an evidentiary hearing "when documentary evidence [is] sufficient to establish contempt and defendant[] failed to demand a hearing or assert any material issue of fact." *Morales-Feliciano*, 887 F.2d at 7 (citing *Commodity Futures Trading Comm'n* v. *Premex, Inc.*, 655

F.2d 779, 782 n.2 (7th Cir. 1981)). A court has "wide latitude in making a determination of whether there has been contemptuous defiance of its own orders." *Neebars, Inc.* v. *Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971).

To determine whether a hearing is necessary, the First Circuit Court of Appeals established the *Aoude* test. The *Aoude* test asks: "Given the nature and circumstances of the case, did the parties have a fair opportunity to present relevant facts and arguments to the court, and to counter the opponent's assertions?" *Aoude* v. *Mobil Oil Corp.*, 862 F.2d 890, 894 (1st Cir. 1988). If the question "is close" and time permits, "then doubt should be resolved in favor of taking evidence." *Id.* Though the test was originally applied in the context of a preliminary injunction hearing, the court also applied it to a contempt order hearing in *Morales-Feliciano* the following year. *Morales-Feliciano*, 887 F.2d at 6.

In *Morales-Feliciano*, prisoners began a class action suit complaining of unconstitutional prison conditions. *Id.* at 2. In 1980, the district court found Puerto Rico's prisons were in violation of the Eighth Amendment. *Id.* When the Commonwealth failed to bring them into compliance by 1987, the court held the Commonwealth in contempt and assessed fines. *Id.* In 1988, the court increased those fines as the Commonwealth continued to fall short of compliance. *Id.* at 3. The Commonwealth argued the 1988 increase was issued without a legally required hearing, but the court ruled that such a hearing was not necessary because its 1988 issuance of contempt "passed" the *Aoude* test. *Id.* at 6. The court explained that the Commonwealth "had adequate notice and an opportunity to present evidence and arguments in writing," but that it failed to point to "disputed factual matters that required an *oral* proceeding" or ask the court for such a hearing. *Id.* at 6–7 (emphasis in original). Thus, the court stated that the 1988 order resulted in "no violation of any legal right." *Id.* at 7.

Here, Feliciano has neither demanded a hearing nor asserted any genuine issues of material fact after Pina moved for contempt on January 24, 2017. Docket No. 217. According to Pina, Feliciano has been "absen[t] and unresponsive" since "at least" August

12, 2016, making it "difficult for Plaintiffs to conduct discovery." Docket No. 224. Despite this, Pina states that "there is ample proof on the internet of . . . unauthorized concerts and engagements by the musical act Tony Dize, as they are promoted and advertised on the social media networking site Instagram by the defendant and his associates." Docket Nos. 216, 216-2. Pina provides screenshots of a number of Feliciano's promotional posters for these concerts. *See* Docket No. 216-2. Thus, because considerable time has passed and Feliciano has neither presented evidence to counter Pina's allegations nor demanded a hearing to present such evidence, the court should grant Pina's motion for contempt.

### III.     Sanctions

Judicial sanctions in civil contempt proceedings "may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States* v. *United Mine Workers*, 330 U.S. 258, 303–04 (1947). "A definite fine which is neither compensatory, nor conditioned on future violations of the court order is punitive and can be imposed only in criminal contempt proceedings." *United States* v. *Professional Air Traffic Controllers Organization (PATCO), etc.*, 678 F.2d 1, 4 (1st Cir. 1982). When a fine is imposed, "it must not exceed the actual loss caused by respondent's violation plus complainant's reasonable expenses in bringing the action." *Morales Feliciano* v. *Rosello Gonzalez*, 124 F. Supp. 2d 774, 785 (D.P.R. 2000).

When the court fashions a compensatory remedy, "a fine is imposed, payable to the complainant. Such fine must . . . be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." *United Mine Workers*, 330 U.S. at 304. When the court's objective is to make a defendant comply, "the court's discretion is otherwise exercised." *Id.* In exercising its discretion, the court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the desired result." *Id.* But "mathematical exactitude is not

required . . . so long as a sanction is reasonably proportionate to the offending conduct." *Goya Foods, Inc.* v. *Wallack Mgmt. Co.*, 344 F.3d 16, 20 (1st Cir. 2003).

In *Goya*, the Court of Appeals for the First Circuit affirmed a sanction imposed on defendants by the District Court of Puerto Rico because, "on whole-record review, the sanction appear[ed] reasonable in amount and the rationale behind it [was] evident." *Id.* In 1969, Charles Unanue ("Unanue") was ousted from his family's business, Goya Foods, Inc. ("Goya"), but he accepted a settlement offer of $4,400,000 in exchange for promising "neither [to] contest his father's will nor file a claim against his father's estate." *Id.* at 18. When Unanue's father died, he broke that promise, and the court ultimately entered a judgment against him of approximately $6,900,000. *Id.* Unanue tried to shield his assets from the judgment, but Goya sued Unanue and his wife, Liliane, in Puerto Rico's federal district court, "seeking to reach and apply an assortment of assets that had been placed in Liliane's name." *Id.* In 1995, the district court issued a provisional order "prohibiting the alienation of these holdings." *Id.* Despite this court order, Liliane sold her shares in a luxury apartment for $4,600,000. *Id.* The district court adjudged the Unanues in civil contempt and imposed a sanction of approximately $6,000,000 ("comprising $4,600,000 on account of the sale price and roughly $1,400,000 in prejudgment interest"). *Id.* at 18–19.

The appellate court affirmed the finding of contempt and held that the district court "acted well within the scope of its authority" in imposing the sanction. *Id.* at 20. The court held that "it was not necessary either for Goya to prove the *actual* time value of the wrongfully withheld funds or for the court to make specific findings derived from admissible evidence." *Id.* (emphasis in original). As a matter of discretion, the district court included a prejudgment interest component in the overall sanction and "peg[ged] that component to the statutory interest rate prescribed by local law." *Id.* Thus, the basis for the district court's sanction was "crystal clear," and more specific findings "were not required." *Id.* Because the Unanues' conduct made it impossible to determine concretely what Goya would have earned on the sale proceeds, the district court was justified resolving doubts in

favor of Goya. *Id.* at 21. Additionally, the "egregious" nature of the Unanues' conduct could have led the district court to believe that "punishment and the need to deter others called for generosity" in the size of the sanction. *Id.* The district court's options ranged from "including no prejudgment interest component in the sanction to including any reasonable amount as a proxy for the time value of money." *Id.* at 19.

Here, Pina is being unlawfully deprived of income whenever Feliciano performs in violation of the CSA. Because of this deprivation, Pina is due compensatory damages. The CSA calls for Pina to receive a commission of "50% of Feliciano's gross income," and yet Pina is not receiving any income from the concerts Feliciano performs in violation of the CSA. Docket No. 176, CSA ¶ 1.14. Pina claims Feliciano has performed at least 52 such "activities and concerts" since March 7, 2016. Docket Nos. 216, 217. In partial support of that claim, Pina offered evidence of 10 social media posts depicting promotional material for 10 of those unauthorized events. Docket No. 216-2. Though he did not offer any evidence to show what Feliciano was paid for those 10 events, Pina previously provided the court with two contracts for unauthorized concerts that took place in July 2015. Docket No. 130. Those July 2015 contracts shed some light on the fees Feliciano received for some his past performances and, thus, offer a yardstick for calculating Feliciano's income from similar performances. Docket No. 130.

For his July 11, 2015 event at Euphoria in Columbus, Ohio, Feliciano's contract reveals that he received $9,000 "plus expenses." Docket No. 130-5. For his July 12, 2015 event at Palace Nightclub in Woodbridge, Virginia, Feliciano's contract shows he received $8,000 "plus expenses." Docket No. 130-6. Averaging these two numbers produces the figure $8,500. Had Feliciano executed these two events in accordance with the CSA, Pina would have been entitled to an average of half of $8,500 (i.e. $4,250) per event to satisfy his 50% commission under the CSA. Thus, for each of Feliciano's 10 violations evidenced by the social media images Pina provided, the court should impose a compensatory fine of $4,250. All told, the combined compensatory fine for all 10 violations totals $42,500. Thus,

I recommend that the court impose a compensatory fine against Feliciano, payable to Pina, for a total amount of $42,500. Finally, this proposed fine is also intended to deter Feliciano from future noncompliance and thereby come into compliance with the preliminary injunction.

## CONCLUSION

For the foregoing reasons, the motion to hold Feliciano in civil contempt of court should be **GRANTED** and Feliciano should be ordered to pay Pina a compensatory fine totaling $42,500.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas* v. *Arn*, 474 U.S. 140, 155 (1985); *Davet* v. *Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co.* v. *Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden* v. *Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 16th day of June 2017.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge